111, 37, 18, Chris, and Ancestors, and the people. There's an ultimate goal there tonight. Counsel, you may proceed. May it please the court, my name is Matt Belcher, I represent Chris Szczepanski. Mr. Breyer, Ms. Fishel, good morning. Today, we ask that you reverse the commission's summary affirmance of the arbitrator's finding of no employment. Chris Szczepanski is a construction worker employed by a construction company who was injured doing construction work. So the issue is whether or not he was an employee or independent contractor? Yes, yes, Justice, that's correct. And if, and it's sort of a Potter Stewart type of decision here, you sort of know it when you see it. Not the Uptown Sinclair analysis you heard yesterday. No, no, no, no, no. But I'm not going to read you the record, but I think that this is sort of one of those situations where you know it when you see it, because as you go through all the facts. The case law, you know, contains, we're very familiar with the number of elements and, you know, the evidence is usually argued both ways. But can you hone in, the right to control the manner of work, as the case law refers to, is sometimes the most significant consideration. So what's, give us your succinct argument on why that weighs in your favor. Yes, yes. And if we look at, for example, Justice, your decision in the Scrubel case, the Agnes Scrubel, it's the 4M Sun Times case. If we look at this case, we see a construction worker working for a general contractor who's at a construction company. Chris is told where to go, what to do. He doesn't really speak English very well. Any comments from the employer in this instance is relayed back through Mr. Kowalski. He works exclusively for this company. And Mr. Kowalski retains the ability to send him on errands, have him go pick up something at Home Depot, gives him a company credit card for the general contractor. And then the arbitrator looks at this information and says, well, I used that to conclude that he's an independent contractor. And to be honest with you, when I look at it, I kind of found the opposite conclusion. And so if I could just go directly to the arbitrator's decision really fast, because I've read the respondent's reply briefs, and it sort of seems to indicate that this is an issue of credibility. And I just wanted to clarify just very briefly as to what the arbitrator did in fact find. And if we look at the second page of the arbitrator's decision, it's my page A-10, it says that the arbitrator finds that the petitioner failed to prove that an employer-employee relationship existed. The arbitrator further finds that the petitioner was an independent contractor that represented the will of ultimate builders only as to the result and not as to the means by which it was accomplished. And I submit that that's not exactly the correct test to make it a determination. But as you – Can we get back to the right to control? Yes, Judge. I think the arbitrator is sort of alluding to that. I mean, what factors weigh in favor of finding he's an employee? Where's the control that mandates that finding? Yes, Judge. He works exclusively for this employer. He's told where to go by the employer. He can be stopped in the middle of doing a task and sent on another task. If I hire a contractor to come paint my walls, I can't send that gentleman to Home Depot to go pick up some lights and run them over to my father's house. Well, an independent contractor isn't the employer the person that the general is going to basically do the same things and tell people where to go, what jobs to perform, how many hours to stay there? I mean, isn't that normally what an independent contractor would do anyway? Yes, but then we look to the second part of the test, which is the area of great significance, which is the relationship of the employer's business with the business of the alleged employee. And that's an issue that just in the Scribble case we said is of great significance, and there's actually a presumption of employment when we look at the relationship of the alleged employee's business as relates to the general contractor. In this instance, the general contractor's business is totally and completely subsumed by that of Mr. Szczepanski. He has no independent office. He has no independent clients. He doesn't advertise. He doesn't do anything other than work exclusively and continuously for Mr. Kowalski's company, Ultimate Builders. Does that mean he wouldn't be an independent contractor? In this instance, he isn't. He's paid per hour. If we have an independent contractor relationship. Well, he testified he's paid by the hour. Kowalski testified he was paid by the job. Right. But if we take $1,495 or whatever the amount of the first check is and divide it by 14, it comes out to be an equal number. And there is another witness. How do we know when somebody discovered that? Right. It's in my materials. No, I understand. But the point is he and Kowalski testified the opposite of each other on multiple points, didn't they? Yes. I mean, there's a lot of contested issues of fact. Yes, Justice Stewart. And so that brings me to the only finding of credibility in this case was on page 13 of the arbitrator's decision, which is my page A21. And here's the only reference to credibility. And it says the arbitrator finds the testimony of Kowalski and Jant canort more credible than petitioner with respect to Kowalski's presence on the job site. And I assume that the first part of the decision finds that, in fact, he needs to be under constant supervision or continuous supervision. Well, was he under supervision here? Kowalski testified he wasn't. And also the guy whose house he was working at, I mean, the evidence is that basically the claimant pretty much controlled how he fixed the house. I mean, whatever job was left up to him to decide how to do it. And how much did he contract to be paid for that job? And was he able to do it at his own time? Where did the materials come from? If he needed to get more drywall, he takes the company credit card and goes over to Home Depot and purchases it? Well, did Kowalski supervise his construction work, or was he pretty much left on his own? And I think this is a point of contention, is that Kowalski says I am not a carpenter, therefore I cannot employ a carpenter. And the arbitrator seems, and the commission seems to have sort of adopted this theory that since Kowalski isn't a carpenter, he can't have a carpenter who is an employee of his. And I don't think that that's the proper test either. However, as relates back to the original point, Mr. Szczepanski goes where he's told to go. He does the work he's told to do. If there's a problem, the homeowner, who believes that Szczepanski is the employee of Ultimate Builders, speaks with Mr. Kowalski. Mr. Kowalski comes, tells Mr. Szczepanski to do something different. He does it different. There's no negotiating or contracting or how much you're going to pay me. Oh, you changed the terms of the agreement? Now there's got to be a change in the amount of money that you're paying me. Oh, you know, if we're going to contract to perform a certain service, and you change the terms of the contract, how come there's no renegotiation? There isn't a renegotiation. He's paid per hour. He's an employee. The law changes. And, in fact, the Attorney General's Office, who started a commission to identify misclassification of employees, there's a change in the law. And so Mr. Kowalski calls in all those guys and says, from now on, we're going to have to write a check to a company because the law has changed. But there's no change in the relationship between the parties. There's only a change in the name of the parties, which, as we all know, is one of the less important factors. The most important factor, as you said, Justice Tustin, is direction and control. But I solicit from the panel, perhaps we could have a clearer phraseology on the fact that the relationship of the alleged contractor with the business of the general contractor should be entitled to what the Supreme Court calls a presumption. And I will acknowledge, as is pointed out in the Attorney General's brief, that it isn't technically a legal presumption. No one says that the burden of proof shifts. But I submit to you that when the entire business of Mr. Szyczopanski is swallowed up by this general contractor business, he should be entitled to at least some presumption that he is an employee. He's a – that's what the Roverson does. That's what – Well, you're here arguing that the decision of the commission is against the manifest weight of the evidence and that the opposite conclusion is clearly apparent, that there's not sufficient evidence in the record to support the commission's decision, even if we disagree with it. So what about that? I mean, there's evidence both – that can be interpreted both ways. The commission went one way. You know, why is there not sufficient evidence in the record of any kind to support the commission's decision? The – I – just for the record, the Ware case was a commission decision that was reversed. Agnes Scrubel was a commission decision that was reversed. In this instance, from what we read is the test used by the arbitrator that he needs to be – have – the arbitrator finds that he was hired for a specific job. Walsh, he's not a carpenter. He has no knowledge of how to perform the work. The arbitrator finds it significant that the petitioner purchased whatever he needed without obtaining prior approval using the company credit card. I don't know about – to me, that's – the opposite result is true. If you – if I am – if I'm a painter and a contractor for the State of Illinois, I don't get a State of Illinois credit card. I don't get a State of Illinois identification, and I get to go use your – the credit card. The idea that because Mr. Kowalski isn't a carpenter, doesn't know how to do carpeting, is – isn't really consistent with the ability of him to come in and contract out the job. How is it that he knows how much to charge this homeowner? Well, why would logically, though, it have some appeal? Because if the person has a right to control, how do you control and direct how an employee does a job if you have no experience or expertise in the field? Wouldn't that tend to lend itself that he's independent because Kowalski can't tell him what he's doing right or wrong? Well, how did Kowalski know how much to charge for the job? I think you can find that off of anybody. But he's a general contractor. And the test that was used by the arbitrator was that the arbitrator finds no credible evidence to support a finding that the petitioner was at all times subject to the control and supervision of Kowalski. And I submit that all times subject to the control and supervision is not the proper test. I also submit that the arbitrator fails to note the petitioner offered instances where Kowalski was at all times controlling and supervising his work. Again, I don't think that that's the proper test, at all times controlling and supervising, or else the owner of a construction company is going to come in and say, I don't know how to do welding, so therefore the welder is not my employee. Oh, I agree with you. It's not a definitive, you know, element. But it does, I can see the argument that a person who hires him doesn't know anything about the subject matter that would imply he's relying on the independence and expertise of the employee. And as far as how did he, you keep saying how did he know what to charge, you can call him a contractor, a friend, and say what do you pay a carpenter? Is that so difficult for somebody to figure out? Well, one of the reasons for the Ware decision is that the court found that there was a public policy interest here of avoiding creating a subclass of people that are uninsured. And this is what's happened in this instance. The commission, if this decision is allowed to stand, is basically committed a subclass of people that don't have access to workers' compensation insurance coverage. If they're not an employee, there's no general contractor for them to go up to. Here's a guy who's operating ultimate construction with no insurance whatsoever. I think he didn't obviously have an employment agreement here. There was no agreement other than verbal, correct? His relationship with Ultimate Builders was a verbal relationship. However, Ultimate Builders' relationship with the homeowner was a written relationship. What about taxes? That's always a key consideration. Was there any withholding here? Was any Social Security paid? No, no, Judge. But I submit to you that every month on the 15th, I have to pay the FICA for my employees. I have to pay my unemployment insurance. And in the same way that when Mr. Kowalski got a job with a legitimate contractor, he was then made to pay the unemployment insurance, and he did pay it for those same workers. And yet, when he had his own independent jobs working for independent homeowners, he didn't pay those benefits. I submit that there's no difference in the relationship. There is only a requirement of compliance by a larger general contractor. And I think if we look at the case as a whole, there is no credibility finding that my client lacked credibility. It only said that the arbitrator found that Mr. Kowalski's presence at the home on a daily basis, that the arbitrator found that that wasn't credible. But there is no finding that my client is in any way a bad person, contrary to perhaps how it's been represented at other times. And then finally, I wanted just to point out that in the Ware decision, there's a quote from Ragler Motor Sales. And if I may just close by rereading that. And it says that because of the theory of workers' compensation legislation, is that the cost of industrial accidents should be borne by the consumer as part of the cost of the product. This court has held that a worker whose services form a regular part of the cost of the product and whose work does not constitute a separate business, which allows a distinct channel to which the cost of the accident may flow, is presumptively within the area of intended protection of the Compensation Act. And I think that that's the instance here. Mr. Sierpanski is entitled to a presumption that was never afforded to him. If we look at the reason for the commission's decision, I find that it's the implied that they used the wrong standard, the wrong test, and they didn't take into consideration or fail to give sufficient consideration to what the Supreme Court guides as a presumption. And then I would just like to finally just conclude, because I know I've used up my time, by saying that the Attorney General's office suggests, and I would like to second the suggestion, that perhaps it's time for the panel to consider applying a different standard of review. We have manifest weight and we have de novo, and perhaps we could start to incorporate a clearly erroneous standard. Why? The reasons are set forth in the Attorney General's brief, and I would rely upon her suggestion in the matter. The Supreme Court's never done it, the workers' compensation case. Justice Hoffman, you're absolutely correct. And after they created a clearly erroneous standard in other administrative actions, they ruled on workers' compensation cases and didn't apply it. Yes. Why should we? Well, I just think that if the time has come for it, for this Court to consider what you generally use in administrative review cases, and it's three different standards, and one of them is clearly erroneous. But I do acknowledge that. How would it benefit you in this case if we adopted the clearly erroneous standard? Well, I think that the manifest weight would be opposite, and opposite is sometimes a difficult hurdle. Clearly erroneous would mean that you'd look at it and realize that the Commission made a mistake. Both sides think they're going to be benefited by this adoption. I'll take my chances with clearly erroneous, yes. Thank you, counsel. Respond? Good morning, Your Honors. May it please the Court. My name is Mary Labreck. I'm an Assistant Attorney General here representing the Illinois State Treasurer as Ex Officio Custodian of the Injured Workers Benefit Fund. How many people are going to argue on this side? I'm sorry? How many of you are going to argue? I was just about to say, Your Honor, that I will be splitting my time with my co-counsel. Have you figured out the time? Putting it equally. You have seven and a half minutes. Thank you, Your Honor. This Court should affirm the circuit court's judgment, thereby affirming the Commission's final administrative decision, because the Commission's determination was supported by the totality of the evidence, including several of the most important factors of the test. As Your Honors have already recognized, the outcome in this case is largely driven by the Commission's credibility determination. Many of the arguments that he made were simply found not credible. He suggests that the Commission never made a specific enough credibility determination. That's not true. There are a number of places where the Commission specifically referred to evidence as being not credible or Tchaikovsky's evidence being more credible. Can you specifically hone in on which elements, you know, the employee vis-à-vis or versus the independent contractor elements, which elements do you believe strongly support the argument that he's an independent contractor? The elements that strongly support, we believe, are the right to control, the nature of the work, the method of payment, and the party's intent. And the two most important are the right to control and the nature of work. What about the right to control? What do you see here in the evidence that falls on your side on the right to control issue? It's largely an absence of any evidence of control. He had various claims that there were schedules and that he was constantly told what to do. But the Commission did not believe his testimony about that. Kowalski testified, and his testimony was consistent with that of Dijewski, the other independent contractor that he had testify, and also with the homeowner in this case. And the claimant also made claims such as that Kowalski moved him around to different job sites. But as you suggested over here, that's the kind of thing that we could just as easily see happening with an independent contractor. There is no need for formal arrangements. It could just be a matter as simple as would you do this sort of thing. And as with many of the things he says, part of the problem is he just doesn't give us any ways to say that an independent contractor wouldn't have done that. These are small businesses, few people involved, informal arrangements most of the time. There's also not evidence of reservation of control in a lot of the ways that we see in other cases. There are no requirements that he ask for permission or even inform them when he's taking employment with anyone else. There are no commitments to any particular periods of time. There are no requirements that he take any safety courses or he follow any particular instructions. There's no requirement that he wear a uniform. How do you respond to opposing counsel's argument that coincidentally, by sheer coincidence, when you look at all the money he was paid in either salary or benefits, it breaks down to exactly $14 an hour? That doesn't sound like somebody bidding by the job. It sounds like somebody who's an hourly employee. So how do you respond to that? Well, I have two responses to that. One is that the first check was the only one that comes out exactly like that. And the second response is that's not inconsistent entirely with it being done primarily by the job. I think there has to be some kind of relationship between the hours worked to the job. And it's not unreasonable to think that their first job would be done on that basis. And again, the commission did not find that persuasive. He made that specific argument and the commission found that he was paid by the job and not by the hour. With respect to the nature of the work, the Supreme Court has specifically held that that does not trump the control factors in all of the cases where we've seen an application of the nature of the work requirement. It was on the side of the control. But we also think that there is evidence that there was a distinct business here. Kowalski was not simply in the business of carpentry. He first wants to call it, the claimant first wants to call it all in the business of the construction. But that's very vague and inclusive. But Kowalski was specifically registered with the city as a general contractor, which is a specific kind of business that is an organizing business that makes things work. They find the people to do the specific things that need to be done in the individual case. And the second thing, we think that there's a reason to distinguish between these types of cases, because this is a case in which something matters other than just, I mean, there's a reason to be an independent contractor in this case, other than simply to save money on unemployment taxes and workers' compensation. Because in this case, flexibility is a more important factor than control. And in employee relationships, control is often a more important pattern than flexibility. And this is a situation in which we had an employer who had, who used people varying from 1 to 14, 14 according, giving the claimant's estimate of how many people there were at the most, who does varying kinds of projects over, with all kinds of variables. And so for him, it is more important to have flexibility than it is to have specific control. And whose vehicles and equipment and tools were used in this case? I don't know that the vehicle was an important factor in this case. I think most of the materials were already provided on site. The construction materials, the drywall. Right, but what about the tools? Who provided the tools? The employer did. Kowalski or did the claimant provide the tools? The claimant provided the small hand tools that he worked with. He said the basic tools. Whose vehicle was he driving? I think the only driving he had to do, he did drive to Home Depot to pick up some things. And whose vehicle was he driving? I believe he was driving his vehicle, although I don't remember whether it specifically says that. I assume that. Counsel, your time is up. Thank you. Thank you, Your Honor. Good morning. My name is Francine Fischel. I represent Mr. Kowalski of Ultimate Builders. And I'm going to try to hone in on some of your questions regarding the issues at hand. We're looking at a situation here where we have individuals who contracted and benefited from their arrangements. And these arrangements worked out very well for all parties. For a while, at least. At least for a while. Until there was an injury. Until there was a breakdown in the relationship. This claimant testified under oath that he actually did charge materials to the credit card that Mr. Kowalski provided to him for his own benefit, whether it was for another job. He stole money from this man. When he went over the numbers, he caught him at it. When he caught him at it, he ended their relationship. At that point, everything went south. I don't see, I see that there was a relationship of trust, that they worked together, that Kowalski respected the work that Mr. Spokanski did. And I thought he thought he was a good carpenter. He hired him to do work in his own house. There's no evidence in the record that there was an ongoing relationship other than his testimony. In fact, there's no documentation of any employment from the period of time when that big condo project ended and when he hired him to do the homeowners project on Oleander and Morton Grove. Months went by when there was no pay at all. And the checks, I think the checks are important because when, at the trial, the claimant testified. I was a full-time, 40-hour-a-week guy. And I got paid, you know, by the hour. But really, other than that first check, he was compensated very handsomely for the work that he did. And he enjoyed that. And he did not pay his taxes because he was asked, he got a 1099, but he didn't pay income tax. And he was offered the opportunity to become an employee at the time of the meeting. That was confirmed by an independent person. He elected to do it this way because he was making more money. And even if we look at the injury itself, which by all means was a serious injury, a ruptured Achilles tendon is a big injury. If we watch football, we know that. How did he continue to work with a ruptured Achilles tendon? He couldn't have because he didn't sustain that injury on that job on that day. We don't know. We can only speculate that it happened somewhere else. But it didn't happen there because he would have been in the hospital. His testimony was he thought it was just a sprain and, oh, he's saving up money to pay for the injury. He could have gone to county hospital and been treated. Somebody who suffers a ruptured Achilles tendon cannot walk, cannot continue to work, would not have been able to complete the job. There's just no question about that. So I'm looking at the case law. I see that the Kirkwood case, which is our Illinois Supreme Court has said, you know, these things can go both ways. And it's interesting with Kirkwood because it's the Kirkwood and the Kirkwood brothers case that went different ways. We looked at the evidence. One time they went with independent contractor. One time they went with employees. And they were similar sets of circumstances. And so if there is a reasonable decision by the commission, which I think there was, it is not against the manifest way to the evidence. The facts are all in dispute on this case. I don't think there's any facts that aren't in dispute. So I don't see that based on the standard of review that the commission should not be affirmed. And if there are any questions from the panel. Thank you. Thank you. Counsel, you may reply. Just very briefly because it's a facts intensive inquiry and I rely upon the written materials. But I would just like to say that it's sort of unfair to Mr. Krzyzewanski here. The counsel says that they had a good relationship until there was an injury and then the relationship broke down and that it's a serious injury. And then the only findings of credibility I read to you had to do with the presence of Mr. Kowalski throughout the day at the job site. There's nobody who said that he stole anything. And for him to be accused of stealing something merely because the arbitrator and the commission said that the issue with respect to Kowalski's presence on the job site, that Kowalski was more credible. I don't think that that's an appropriate way to characterize Mr. Krzyzewanski, his relationship to this case and what was acknowledged to be a serious injury. And I'd just like to rely upon the overall framework that he was controlled. He had an exclusive relationship. He's a construction worker working for a construction company and he got injured doing construction work. And we know it's a serious injury. And if we do an inquiry as to direction and control, it survives. If we look at the presumption that he should have been afforded, that he wasn't afforded, I think that this panel will determine that the decision is against the manifest way to the evidence. The attorneys argue that your client used the credit card to buy materials for a different job. Is that accurate? Is that in the record? No, it's not. That's just speculation? Yes, Judge. There's indication that he purchased a present for one of the co-workers and that he didn't make purchases on the credit card, that he had always reimbursed Mr. Kowalski. There was a dispute at the time of the trial whether he had reimbursed all of the money. I submit that that's an excuse based upon his injury. Well, would it be accurate to say that he used a credit card to buy some personal items and they're simply not identified in the record? Yes, Judge. Okay, thank you. Okay, thank you, counsel. Thank you very much. It's a matter of retaking our advisement on this positional issue.